**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

SINA A. WOODS,

                Plaintiff,

v.                                   CIVIL ACTION NO.   5:11-cv-00043

PATRICK R. DONAHOE,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Sina A. Woods, former Postmaster of the Shady Springs United States Postal Service, brings this civil action against the United States Postal Service ("USPS") alleging employment discrimination on the basis of disability and retaliation, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, et seq. The Court has reviewed Defendant's Motion for Summary Judgment ("Def's. Mot.") (Document 21).   After careful consideration of the motion, the memoranda submitted in support thereof (Document 22), in opposition thereto (Document 25) and in reply (Document 27), together with the attached exhibits, the Court, for the reasons that follow, grants Defendant's motion.

## I.   BACKGROUND

On April 6, 2002, Plaintiff began serving as a Level EAS-15 Postmaster at the United States Post Office in Shady Spring, West Virginia.   Prior to obtaining this position, but while an employee for the United States Postal Service, Plaintiff was diagnosed with having heel spurs on both feet.   In 1999, after complaining of hard foot tendons, burning and swelling in her feet,

Plaintiff's treating podiatrist, Dr. Luciano L. Serdoz, diagnosed her as suffering from a musculoskeletal ailment known as bilateral plantar fasciitis.   Plaintiff complained that the ailment caused pain in her legs and made her walk imbalanced. Ten months after beginning her service as a Postmaster, in February 2003, Plaintiff, at the suggestion of her podiatrist, asked her supervisor whether he would "accommodate" her by permitting her to use four hours of sick leave each workday to avoid the pain in her feet.   (Pl.'s Ex. B, Transcript of EEOC Hr'g, Vol.2, June 29, 2007 at 215-216.)   On February 21, 2003, Jim Pate, then Postal Operations Manager, approved the "Light Duty Request" for four hour workdays until March 17, 2003.   Thereafter, Plaintiff submitted various "Excuse Slips" from Dr. Serdoz which indicated a need for her continued partial work schedule due to her ailment.

On July 29, 2003, Plaintiff submitted a Notice of Occupational Disease and Claim for Compensation to Office of Workers' Compensation Program ("OWCP") form to the United States Department of Labor. (Def.'s Ex. C.)   She reported that her employment, specifically, standing on her feet on concrete floors, aggravated her heel spurs and plantar fasciitis. (*Id.*)   She reported that "after being at work about [one] hour, [her feet] began burning, and swelling and throbbing pain." (*Id.*) She explained that she previously controlled her ailments with injections and medications, but these treatments had become less effective. (*Id.*)   In response to an inquiry from the OWCP case manager about Plaintiff's daily use of four-hour sick leave, Jim Pate acknowledged that Plaintiff was only working partial days, in light of her medical documentation, and that she was performing her normal duties as Postmaster. (Pl.'s Ex. G, Email on behalf of James E Pate to Kathleen Sansoni, dated July 29, 2003.)   On September 24, 2003, Dr. Serdoz completed a "Duty Status Report" for the OWCP, wherein he detailed that Plaintiff's condition of "heel spurs and plantar

2

fasciitis are aggravated by concrete floors." (Pl.'s Ex. H.)   Dr. Serdoz stated that Plaintiff's walking should be "15 min[utes] per hour. No continuous walking, walking a route. Normal walking to/from vehicle is fine." (*Id.*)   He also noted that she could sit for ".30" hours per day. (*Id.*)   Afterwards, Plaintiff, again, submitted multiple "Excuse Slips" from Dr. Serdoz noting the need for her to maintain four hour workdays for the period of November 14, 2003, to April 12, 2004. (Pl.'s Ex. I.)   Ultimately, Plaintiff worked these limited four hour workdays from February 2003 to April 15, 2004.   On April 13, 2004, she submitted an "Excuse Slip" requesting to be excused from work for the period of April 15, 2004, to May 23, 2004, because she planned to have a surgical procedure on April 15, 2004, to alleviate her impairment in her right foot.   (Pl.'s Ex. J.) Plaintiff had the surgery as planned.   However, she did not return to work after the surgery.

On May 26, 2004, Dr. Serdoz submitted a Work Capacity Evaluation to the OWCP, wherein he stated that Plaintiff suffered from bilateral plantar fasciitis, that she had reached her maximum medical improvement, that she was not capable of performing her usual job and that she was not able to walk or stand for more than two hours a day. (Pl.'s Ex. K.)   Although he stated that Plaintiff's restrictions were permanent, he indicated that she could work an eight-hour workday with the restrictions. (*Id.*)   However, he did not list any medical facts, situational factors, equipment or devices that were necessary to be considered in the identification of a position for Plaintiff. (*Id.*)   Plaintiff began to receive full worker's compensation benefits at sixty percent of her pay that same month.

Three months following the surgical procedure, Plaintiff sought immediate retirement. (Def.'s Ex. B., Application for Immediate Retirement, dated July 14, 2004.)   She also completed a Statement of Disability on which she listed, among other things, that her plantar fasciitis and heel

spurs "prevent[] [her] from performing most all aspects of [her] job." (*Id*.)   She explained how her

ailments interfered with the performance of her duties and restricted her activities, as follows:

> The pain, swelling and burning in my feet that is created from my
> job activity the concrete/tile floors is intolerable[.] [T]his constant
> pain has created anxiety and depression and continuous stress[.]
> Also when I am under stress this makes the Fasciitis &
> Fibromyalgia extremely worse.
>
> I cannot be on concrete/tile floors walking or standing for more than
> [fifteen] min[utes] at a time. Creates such pain at this time it is very
> difficult for me to go to the grocery store, shopping for myself.
> This has limited my daily every day activity greatly.

(*Id*.)   In response to the question, "What accommodations have you requested from your agency?,"

Plaintiff stated:   "Up until I had surgery on my right foot I had worked [four-hour] days. Since

having the surgery I have not had the results I hoped for and find it is not possible to work with the

stress and pain." (*Id*.)   She did not respond to the inquiry about whether her "agency [has] been

able to grant [her] request."   (*Id*.) On July 30, 2004, Dr. Serdoz advised the USPS' Personnel

Service of Plaintiff's ailments, the nature of her treatment plan to date and her post-surgical

recovery.   Dr. Serdoz indicated that Plaintiff's symptoms temporarily improved following the

surgery, but "the pain and disability returned" when she returned to full activity.   The physician

further explained that Plaintiff, "at this point is not able to bear weight for any length of time

without recurrence of pain and is not able, in my opinion, continue [sic] working with the U.S.

Postal Service."   (Def.'s Ex. F., July 30, 2004 Letter from Luciano L. Serdoz, D.P.M. to United

States Postal Service, Personnel Services.)   Dr. Serdoz also stated that there were no additional

medical treatments available to treat Plaintiff's condition, that Plaintiff had "reached her maximum

degree of improvement[,]" and that he agreed with Plaintiff's "decision to terminate her

employment with the Postal Service as there is no other treatment modality that would relieve the pain and enable her to return to normal productive capacity." (*Id.*)

At some point, William M. Akers became the Postal Operations Manager and Plaintiff's supervisor.   At some point, William H. Akers became the Postal Operations Manager and Plaintiff's supervisor.   He completed a "Supervisor Statement" in connection with Plaintiff's disability retirement process, wherein he noted that Plaintiff was "unable to perform work due to pain and stiffness in feet." (Def.'s Ex. E., Supervisor Statement, dated August 16, 2004.)   He reported that she had stopped coming to work and that the length of her absence was unknown and that her attendance was unacceptable for continuing in the current position." (*Id.*)   Mr. Akers explained the impact of Plaintiff's absence on work operations by noting that Plaintiff is "unable to stand or walk for very long. She is 1 of 2 employee[s] to work window at this location. When she is unable to work – a replacement must be utilized." (*Id.*)   However, he did not find that her conduct was unsatisfactory.   Mr. Akers did not respond to the question: "what efforts have been made to accommodate the employee in the current position. (Def.'s Ex. E.)

On November 30, 2004, Dr. Barry Levin, M.D. conducted an independent exam of the Plaintiff.   In a December 2, 2004 letter, Dr. Levin determined that Plaintiff continued to suffer from plantar fasciitis. (Pl.'s Ex. L., December 2, 2004 Letter from Dr. Barry Levin.)   He noted that Plaintiff continued to complain about pain in both of her heel areas and explained to him that "as long as she has to walk on the hard floor she cannot return to work."   (*Id.*)   While he found that her treatment had plateaued, he disagreed with the opinion that her restrictions were permanent. (*Id.*)   He opined that while her "prognosis is poor," Plaintiff "would have to improve from this highly disabled condition," if she exercised her feet, continued to use anti-inflammatory

5

medication, and modified her shoe wear by using soft inserts. (*Id.*)   Dr. Levin also stated that "[i]t would be ideal if some sort of modification could be done at her workplace where she could sit most of the time to perform her duties and walk in an area where there is a padded carpet." (*Id.*) Four days later, on December 6, 2004, Dr. Levin completed a Work Capacity Evaluation form for the OWCP with respect to Plaintiff's bilateral plantar fasciitis. (Pl.'s Ex. M.)   He indicated that Plaintiff was not capable of performing her usual job because she cannot stand for more than three hours a day, but if she were allowed to sit for seven to eight hours during work, she should be able to perform her work. (*Id.*)   He also indicated that Plaintiff could stand for one hour. (*Id.*)   On December 13, 2004, Plaintiff's disability retirement application was approved and she separated from the USPS. (Compl., ¶ 25.)

　　　Plaintiff testified at the EEOC hearing that she advised her OWCP representative, Denise Fisher, that her retirement was approved and that she was informed that she did not have to accept the retirement. (Def.'s Ex. A., EEOC Hr'g Tr. at 245.)   In January 2005, Denise Fisher sent a letter to the USPS "informing them . . . to bring [Plaintiff] back to work." (Def.'s Ex. A., EEOC Hr'g Tr. at 246.)   Thereafter, Janet Manno, Eastern Office Area Human Resources Specialist, sent an email to Mr. Akers and James Cox advising that Plaintiff was "considered partially disabled [given Dr. Levin's report] and is being considered for placement into a modified position."   (Pl.'s Ex. N., Email from Janet Manno to William Akers).   Ms. Manno provided Plaintiff's work restrictions in the email, among other things, and asked for assistance in "identifying an assignment consistent with Ms. Wood's medical limitations." (*Id.*)   She requested a response by March 25, 2005.   On March 8, 2008, USPS posted the Shady Spring Postmaster vacancy as an

EAS Level 18 employee.   The position was filled by Gregory S. Accord effective May 14, 2005. (Pl.'s Ex. P.).

Four days later, the USPS offered Plaintiff a Re-employment Offer for the position of a Modified Mail Processing Clerk, Level 5, in the Beckley, West Virginia, Post Office.   The position would require Plaintiff to work from 5:00 a.m. to 1:30 p.m., with Sunday and Wednesday off.   The Offer letter included a listing of Plaintiff's physical restrictions as established by Dr. Levin, specifically, that Plaintiff could sit for eight hours per day, walk one-half hour per day and stand for one hour a day.   The Offer detailed the following duties:

> You will work as a mail processing clerk and perform sedentary work casing letter mail which weigh up to 1 to 3 ounces for 1-2 hours. This job requires the ability to sit, use both hands for simple grasping and fine manipulation. Also, you will be required to sit and perform administrative duties which consist of assisting and administrating the PEG (Performance Evaluation Guide) safety programs. You will be required to deliver late arriving Express Mail. Other administrative duties will be assigned by your supervisor within your restrictions.

(Pl.'s Ex. Q., Modified Job Offer dated May 18, 2005; Def.'s Ex. G.)   The assignment was effective Saturday, June 11, 2005, pending successful completion of a urine drug screen test.   The Offer Letter advised Plaintiff that "[i]if you believe this assignment is not a proper accommodation, you have the right to submit, in writing, any additional information pertaining to your case for review and consideration."   (*Id.*)   Plaintiff was also advised that if "this position is not a proper restoration, you may appeal to the Merit Systems Protection Board (MSPB)."   (*Id.*) On May 23, 2005, Plaintiff declined to accept the position. (*Id.*)   Instead, she wrote a letter to Ms. Manno stating her belief that the Modified Job Offer was "not a proper accommodation."   She indicated that she declined the offer for the following reasons:

> Modified Job Offer is not job specific, the modified job offer letter made reference to 'Other administrative duties will be assigned by your supervisor within your restrictions."
>
> The hours for this job are not comparable to my normal schedule, both work hours and scheduled days off. My normal schedule was 08000 – 1700, with Saturday and Sunday being my scheduled days off.

(Pl.'s Ex. R., May 23, 2005 Letter to Janet Manno, USPS from Plaintiff.)   Plaintiff also challenged Dr. Levin's recommendation of her restrictions as in conflict with her personal physician. She contended that her doctor restricted her to work four hours a day only.   On June 1, 2005, OWCP Claims Representative Denise Fisher responded to Plaintiff's rejection of the Modified Job Offer, wherein she advised that the job offer had been reviewed and found to be "suitable in accordance with [her] medical limitations" as provided by Dr. Levin's December 6, 2004 report, and that the reasons for declining the job offer were "not acceptable." (Pl.'s Ex., S., June 1, 2005 Letter to Plaintiff from Denise Fisher, OWCP Claims Examiner.)   Ms. Fisher asserted that the job offer was "sufficiently detailed"; that "a dislike of the hours or days scheduled is not an acceptable reason to refuse the offered position"; that Plaintiff's own physician, Dr. Serdoz in January 2005 "agreed with Dr. Levin that she could perform full time sedentary duty work[,]" and that she would be "paid compensation based on the difference (if any) between the pay of the offered position and the current pay of your position on the date of injury." (*Id.*) Plaintiff was given thirty days to accept the position or provide a written explanation of her reasons to decline the Modified Job Offer. (*Id.*)

Plaintiff subsequently filed an EEO Complaint with USPS on July 18, 2005, to allege employment discrimination based on sex, age, physical disability, and retaliation.  Plaintiff had previously filed an EEO complaint in 2002 against Human Resources Manager James Cox and

others.   That matter was settled in December 2004 and January 2005.   With respect to the 2005 Complaint, the EEOC issued an adverse decision as to Plaintiff regarding her claims of discrimination.[1]   This ruling was ultimately upheld on appeal.   After the EEOC's decision became final, Plaintiff filed the instant action in this case.

In the case *sub judice*, Plaintiff asserts that Defendant (1) discriminated against her on the basis of her disability when she was denied reinstatement to her position as Postmaster of the Shady Spring Post Office because of her disability; (2) failed to engage in an interactive process with Plaintiff and refused to provide a reasonable accommodation, and (3) retaliated against her for prior participation in protected EEO activity when he failed to reinstate her position as Postmaster, engage in an interactive process and accommodate her disability. (Compl. ¶¶ 41-50.)[2]

## II.   STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of

---

1   The Commission's sole favorable ruling related to Plaintiff's claim that USPS management officials mishandled her private medical information when it disclosed copies of her medical records to certain management officials to identify a modified job for Plaintiff. Despite the favorable ruling, the EEOC concluded that Plaintiff did not suffer any loss as a result of the disclosure and no damages were awarded.   This litigation does not concern this ruling or Plaintiff's allegations of discrimination based on sex or age.

2    Plaintiff seeks reinstatement to her position as Postmaster; an award of compensatory damages, back pay, damages for her lost future earning capacity, attorney's fees and costs, prejudgment and post-judgment interest; injunctive relief from further retaliatory acts and violations of the law; and declaratory judgment that Defendant's conduct was unlawful.   (Compl at 6.)

a party's case.  *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. (*Id.*)   The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Rule 56 of the Federal Rules of Civil Procedure requires that:

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986).  If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.

### III.    DISCUSSION

Defendant contends that summary judgment is appropriate on each of Plaintiff's claims. The Court will consider each claim below.

#### A.  Reasonable Accommodation

Plaintiff alleges in her complaint that she could perform the essential functions of the Postmaster position, but Defendant, despite having knowledge of her disability, failed to engage in an interactive process with her and refused to provide her with a reasonable accommodation, in violation of the Rehabilitation Act. (Compl., ¶¶ 45-48.)   The Rehabilitation Act prohibits discrimination by recipients of federal funding, including agencies or departments of the federal government, against certain disabled individuals. 29 U.S.C. § 794(a).   An employer must provide "reasonable accommodations" to an employee who is "disabled," within the meaning of the ADA and the Rehabilitation Act, unless the employer can demonstrate that the provision of such accommodations would impose an "undue hardship." *Fink v. Richmond*, 405 F. App'x. 719, 723 (4th Cir. 2010) (unpublished); *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 353 (4th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see Doe v. Univ. of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir.1995) (explaining that the same elements apply to the ADA and § 504 of the Rehabilitation Act). To establish a prima facie case for failure to accommodate under the Rehabilitation Act, an employee must show: (1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) she could perform the

11

essential functions of the position with reasonable accommodation; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001).   The burden to provide notice is not an onerous one: the employee does not need to mention the ADA or use the phrase "reasonable accommodation," but need only inform the employer of both the disability and the employee's need for accommodations for that disability. *Schneider v. Giant of Maryland, LLC*, 389 F. App'x 263, 270 (4th Cir. 2010) (citation omitted).

Defendant does not dispute that Plaintiff has a disability and that he had notice of it. However, Defendant challenges Plaintiff's allegations with respect to the balance of the requisite elements.   Defendant argues that Plaintiff's claim fails because (1) she was not employed by USPS in May 2005 when the Modified Job Offer was made and declined and, therefore, she was not entitled to or owed a right to a reasonable accommodation; (2) by her own statements and that of her treating physician she could not perform Postmaster duties at the time the Modified Job Offer was made and, therefore, she was not a "qualified individual with a disability"; and (3) Defendant had no duty to begin a reasonable accommodation process until Plaintiff requested an accommodation, but Plaintiff made no such request.   Defendant further argues that if the Court were to find that Plaintiff made a request for a reasonable accommodation, the Modified Job Offer was a reasonable accommodation.

The Court finds that the fatal flaw in Plaintiff's claim is that she has not identified any evidence demonstrating that she, in fact, requested a reasonable accommodation of her employer to fulfill the duties of the Postmaster position following her surgery. There is no dispute that for thirteen months between January 2003 and April 13, 2004, Plaintiff requested, at the suggestion of her podiatrist, to work four hour workdays due to the pain she experienced from her plantar

fasciitis.   Plaintiff's supervisor, Jim Pate, approved each request for a work schedule modification.   Plaintiff supported each request with an excuse slip from her physician who indicated the need for her limited work schedule.   The record reveals that Plaintiff discussed her partial workdays with her supervisor and they mutually determined that a mail clerk working within the facility could assist Plaintiff with some tasks (i.e., working at the retail window and moving mail cages), both while Plaintiff was in the Post Office and after she completed her four hour workday.   However, Plaintiff has not cited any evidence to demonstrate that she made any request for a reasonable accommodation after she recovered from the surgery of her right foot. Indeed, Plaintiff did not return to work after April, 13, 2004.

Defendant has presented evidence that Plaintiff and Dr. Serdoz, her treating podiatrist, began on May 26, 2004, detailing that Plaintiff's ailment had not improved after the surgical procedure, that she was not capable of performing her usual job and that she was not able to walk or stand for more than two hours a day.   Dr. Serdoz advised that Plaintiff's restrictions were permanent, but that she could work an eight hour day with restrictions.   He did not identify these restrictions or discuss the use of any equipment aid.   Although, Dr. Serdoz's May 26, 2004 letter included a statement that Plaintiff could work for two hours during the day, the Court finds that this statement is insufficient to find Defendant liable for violating the Rehabilitation Act. Plaintiff has not cited to any evidence in the record of her request for such an accommodation, defendant's denial of the same or any evidence in the record that such an accommodation was reasonable.   Instead, the record contains evidence that Plaintiff sought disability retirement three months after her surgery.   In doing so, she stated on her Statement of Disability that her ailments "prevent[ed] her from performing most all aspects of [her] job."   Plaintiff explained that her

13

ability to stand was even more limited than Dr. Serdoz's stated restriction when she stated she could not walk or stand for more than fifteen minutes at a time.   Significantly telling is Plaintiff's response to a question on the Statement of Disability form about what accommodations had been requested from her agency.   Plaintiff replied: "Up until I had surgery on my right foot I had worked [four-hour] days. Since having the surgery I have not had the results I hoped for and find it is not possible to work with the stress and pain." (Def.'s Ex. B.)   Further, on July 30, 2004, Plaintiff's physician advised Defendant's Personnel Services that Plaintiff's ailment prevented her from working at the Postal Service.   These statements cut against Plaintiff's assertion that she could do her job in 2004 and that she and her physician requested an accommodation.   Contrary to requesting an accommodation, it demonstrates Plaintiff's desire to discontinue her employment. These letters are sufficient to put Defendant on notice of Plaintiff's disability, but on these facts, where Plaintiff did not specifically ask for a reasonable accommodation, Defendant's obligation to participate in the interactive process of determining a reasonable accommodation was not triggered. *Taylor v. Principal Fin. Group, Inc.* 93 F.3d 155 (5th Cir. 1996) (employee's request for an accommodation triggers employer's obligation to participate in interactive process); *see also Peltier v. Greyhound Lines, Inc.*, No. C/A2:00-1726-18AJ, 2001 WL 34681748 (D.S.C. Aug. 6, 2001), affirmed, 25 F.App'x 182 (4th Cir. Jan. 18, 2002)

Plaintiff attempts to assert that her physician, Dr. Levin, requested an accommodation in December 2004 on her behalf.[3]   Dr. Levin was not Plaintiff's treating physician. Indeed, he

---

3   In support of this assertion, Plaintiff relies upon two E.E.O.C. Appeal cases: *Nelson v. Potter*, Appeal No. 01981981, 2001 EEOPUB LEXIS 6172 (E.E.O.C. Aug. 16, 2001); *Marriott v. John E. Potter*, Appeal No. 01994803, 2001 WL 884947 (E.E.O.C. July 12, 2001).   The Court has considered the cited authorities and makes the following findings.   In the first instance, the Court finds that the appellate decisions of the E.E.O.C. are not binding authority on this Court.   *Casole v. Johanns*, 577 F.Supp 2d 138, 142 n.3 (D.D.C. Sept. 11, 2008). Further, in *Nelson*, contrary to Plaintiff's statement, the E.E.O.C. did not find the complainant's doctor's report a request for a reasonable accommodation, but rather insufficient to establish that complainant needed accommodation.   *Nelson*, EEOPUB

merely offered a second opinion relative to Plaintiff's ailments for the Department of Labor.   In his report, he disagreed with certain assertions of prognosis made by Plaintiff's treating physician and stated what would be "ideal" to modifying Plaintiff's workplace.   He did not directly suggest or request such a modification.   Under the ADA, requests for accommodation must be express and must be linked to a disability.   *Estades-Negroni v. Associates Corp. of North America*, 377 F.3d 58, 64 (1st Cir. 2004) (citation omitted).   Dr. Levin's December 2, 2004 assessment of Plaintiff was completed just eleven days prior to the approval of her retirement.   However, Plaintiff has failed to cite to any part of the record to indicate that she followed up with her supervisors either prior to or immediately after her retirement to determine if a reasonable accommodation like the "ideal" modification suggested by Dr. Levin would be possible.   There is no dispute in the evidence to suggest that Plaintiff made such request for an accommodation in March 2005 upon learning that the Shady Spring Postmaster position was reported as vacant, or at any point thereafter.   Indeed, she did not even discuss the possibility of Dr. Levin's "ideal" modification in her May, 23, 2005 letter in response to the Modified Job Offer.   Further, Plaintiff has cited to no evidence that she advised an employee of the Office of Workers' Compensation Program that she desired to continue working in the Postmaster position.   Clearly, "[a]n employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation." *Crawford v. Union Carbide Corp.*, No.98-2448, 1999 WL 1142346, 4 (4th Cir. Dec. 14, 1999) (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir.1998)).

LEXIS 6172, *9-10 (in considering the doctor's report the commission found "while cautioning that complainant must avoid cigarette smoke; noxious fumes; extreme temperatures; humidity  . . . does not indicate that complainant needed accommodation at work.")   Moreover, the doctor's report at issue in *Marriott*, was from the complainant's treating doctor, unlike the argument proffered by Plaintiff here, and directly requested an assignment to different duties for a time certain. Dr. Levin's December 2 and 6, 2004 statements are not comparable.

During her EEOC hearing, Plaintiff testified regarding the use of a wheelchair in the Postmaster position.   However, Plaintiff at no time ever requested an accommodation to keep the Shady Spring Postmaster position by use of a wheelchair or motorized scooter.   Plaintiff did not advise her employer that she frequently used such items when she shopped and that she could perform her duties with use of such equipment aids.   Plaintiff has identified no evidence that she requested any other alternatives or options for an accommodation. *See Schneider*, 389 F.App'x at 270 (finding that Plaintiff did not request a reasonable accommodation for a pharmacy supervisor position when his current position caused pain to his feet; court stated "[a]lthough there may be other alternatives and options that will not require Schneider to be on his feet for his entire work shift in the pharmacy manager position, Schneider neither requested such alternatives, nor requested to discuss any other potential accommodations with his supervisors.) "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor*, 93 F.3d 155, 165.   Plaintiff has failed to identify any material fact in dispute to prevent a finding that summary judgment is warranted on these facts.

Further, Plaintiff has cited to no evidence that she requested an accommodation or the placement in her Postmaster position during 2005.  Arguably, if this Court were to find that Plaintiff requested a reasonable accommodation through Dr. Levin's December 2 and 6, 2004 statements, Plaintiff received such an accommodation when she was offered the modified position of modified mail processing clerk.   Consistent with Dr. Levin's December 6, 2004 Work Capacity Evaluation, the position would require siting for eight hours, use of a motor vehicle at work, standing for only one hour and walking for one-half hour per day. These restrictions were given in light of Dr. Levin's December 6, 2004 stated assessment that Plaintiff was unable to

perform her usual job. The position would be in Beckley, West Virginia, the same city in which Plaintiff resided, and would be compensated at the same salary as the Postmaster position.   In response to the offer, Plaintiff objected on the basis that the position modification duties were not sufficiently specific, the job required a work schedule different from the hours and days she worked as a Postmaster, and that Dr. Levin's assessment providing for an eight hour work day conflicted with her treating physician's assessment that she could work for four hours.   Plaintiff's only objection to the accommodation that had a nexus to her disability is with respect to the hours that she could work in one day.   However, that objection was not meritorious, as Dr. Serdoz, her treating physician, has previously stated on May 26, 2004, that she could work an eight hour day with restrictions.   After being advised of the same by Denise Fisher, Claims Examiner for the Office of Workers' Compensation Program, Plaintiff was given an opportunity to "provide a written explanation of [the] reasons" for failing to accept the modified job offer within thirty days (Def.'s Ex. I.)   Plaintiff cites to no evidence in the record that she continued to engage in any dialogue to craft an accommodation consistent with her restrictions. She declined the position and has not worked for Defendant since.

In sum, Plaintiff has failed to demonstrate that she requested a reasonable accommodation after her retirement for the Postmaster position.   There is no dispute that Plaintiff knew how to do so.   Indeed she worked under a reasonable restriction for thirteen months in 2003 and 2004. Based on this history, she had no reason to believe Defendant would not honor her request for an accommodation.   Therefore, upon consideration of the foregoing, the Court finds that Plaintiff has failed to cite to any genuine issue of material fact sufficient to support a finding that Defendant violated the Rehabilitation Act by failing to provide her with a reasonable accommodation.

B.  *Discrimination on the Basis of a Disability*

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).   The Rehabilitation Act prohibits discrimination by recipients of federal funding, including agencies or departments of the federal government, against certain disabled individuals. 29 U.S.C. § 794(a).   To the extent that Plaintiff is alleging a disparate treatment claim based on disability, Plaintiff must demonstrate that she: (1) has a disability under the Rehabilitation Act; (2) is qualified for the employment in question; and (3) suffered an adverse employment action of discrimination on the basis of disability.  *Brockman v. Snow*, 217 F.App'x 201, 208 (4th Cir. 2007) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).   To assert a claim of unlawful employment discrimination, a Plaintiff may proceed through two avenues of proof.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc). Like Title VII cases, an analysis under the Rehabilitation Act follows the *McDonnell Douglas* framework of burden shifting.[4] Pursuant to this framework, once the plaintiff has established a prima facie case of discrimination, the burden of production, but not persuasion, shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *See Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973).   Once an employer meets this burden by producing affidavits, testimony or other evidence demonstrating its legitimate, nondiscriminatory reason for the adverse action, the presumption disappears and the plaintiff must show that the articulated reason is pretext for disability discrimination. (*Reeves* at 142-43.)

---

4    Moreover, the Rehabilitation Act is interpreted using the law applicable to the Americans with Disabilities Act. *Brockman*, 217 F.App'x at 208.

The Court finds that Plaintiff's claim for disability discrimination must fail, as well. Defendant concedes that Plaintiff has a disability, but contests her showing of a prima facie case in that she was not aggrieved by the May 2005 Modified Job Offer and that she has not shown that any similarly situated employees were treated more favorably.   Defendant argues that Plaintiff has not presented any direct evidence to support her claim for disparate treatment discrimination. The Court finds that Plaintiff has not presented any direct evidence demonstrating that "but for" Defendant's discriminatory motives she would have been reinstated to her position as Postmaster of the Shady Spring Post Office.   For the purposes of this discussion, the Court will assume that Plaintiff established a prima facie case of discrimination.   However, Plaintiff maintains her burden of persuasion that the articulated legitimate reasons for Defendant's actions in offering Plaintiff a Modified Job Offer is pretextual.   Plaintiff has not presented any genuine dispute as to a material fact that this is so.   Defendant states that Plaintiff was offered a modified or rehabilitation position upon consideration of Dr. Levin's noted restrictions and his belief that she could not perform the duties of the Postmaster position.   There is a basis for Defendant's action in the record.   After her April 2004 surgery to her right foot, Plaintiff never returned to work.   A month after the surgery, her treating physician stated that she was not able to perform her usual job because she could not stand or walk for more than two hours and that her restrictions were permanent.   Two months later, on July 30, 2004, Plaintiff's treating physician stated that her "symptoms were improved until she returned to her normal full activity" when she began experiencing swelling and pain, her symptoms persisted despite exhausted conservative and surgical management, and that she was not "able to bear weight for any length of time without recurrence of pain and is not able . . . continue working with the U.S. Postal Service."   (Def.'s Ex.

F.)   Indeed, Plaintiff's own statements in 2004 that she could not, as a result of her plantar fasciitis, "perform[] most all aspects of [her] job" further supported Defendant's knowledge that she could not perform the Postmaster position. Further, as found above, Plaintiff cites to no evidence that she requested reinstatement or an accommodation to perform the Postmaster position prior to her retirement, after she separated from her employment prior to the offering of the Modified Job Offer, or in response to the Modified Job Offer.   Additionally, Dr. Levin, in his December 6, 2004 Work Capacity Evaluation indicated that Plaintiff could not perform her usual job.   He further provided restrictions on the types of activities she could perform.   Plaintiff points to no evidence in the record that would present a genuine dispute that she advised Defendant in 2005 that her disability had improved and that she could, in fact, perform her duties. It is undisputed that even upon learning that Defendant had posted a vacancy announcement for her position, Plaintiff did not apply for the position, contact her former supervisor to express any interest in reinstatement or seek the same with the assistance of her contacts with the Department of Labor or Office of Workers Compensation Program.[5]  To the extent that Plaintiff was not reinstated to the Postmaster position because Defendant believed she could not perform the duties of that position or meet the attendance requirements of the job, on these facts, the Court finds that no reasonable jury could conclude that Defendant failed to reinstate Plaintiff to the Postmaster position on the basis of a discriminatory animus.

*C. Retaliation*

The Court turns next to Plaintiff's final claim that she was unlawfully retaliated against for engaging in protective activity.   Defendant moves for summary judgment on this claim by

---

5    Although a claim under the Federal Employees Compensation Act, "FECA," 5 U.S.C. §§ 8101-8193, has not been asserted in this case, the Court observes that Plaintiff has cited to no evidence that she requested restoration to her position in a timely manner pursuant to FECA.

asserting that Plaintiff "cannot produce evidence to connect her prior protected activity to Defendant's offer to re-employ her in the sedentary rehabilitation job . . . and Defendant had legitimate non-discriminatory reasons to offer said job."   (Def.'s Motion for Summary Judgment at 2.)   Plaintiff contends that Mr. Cox, Human Resources Manager, retaliated against her when he failed to "have the Agency offer [her] a modified job offer as Postmaster with a reasonable accommodation."   (Pl.'s Opp'n.)

The Rehabilitation Act incorporates the anti-retaliation provision from Section 12203(a) of the American with Disabilities Act ("ADA"), 29 U.S.C. §§ 791(g), 793(d), 794(d); *see Doe v. Univ. of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir.1995) (explaining that the same elements apply to the ADA and § 504 of the Rehabilitation Act).   Section 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Chapter." 42 U.S.C. § 12203(a). This proscription of unlawful retaliation is similar to the exclusion provided for by Title VII.   *See* 42 U.S.C. § 2000e-3(a); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (recognizing that "because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose–the prohibition of illegal discrimination in employment–courts have routinely used Title VII precedent in ADA cases.") Plaintiff has not identified any direct evidence of a retaliatory animus by Mr. Cox.   As a result, where direct evidence of retaliation is lacking, this Court may utilize the burden shifting analysis framework of *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973), established in Title VII, in consideration of this claim.

To make a prima facie case of retaliation, a plaintiff must show that she (1) engaged in a protected activity; (2) the employer acted adversely against her; and (3) the protected activity was causally connected to the adverse action. *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007). "To satisfy the second element, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). To prove a causal connection, Plaintiff must be able to show that management officials retaliated against her because she engaged in a protective activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). "In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." *Rhoads*, 257 F.3d at 391. (citations omitted).[6] In the burden shifting context, if a plaintiff can establish a prima facie case, the burden of production shifts to the defendant to rebut the presumption of retaliation by articulating a legitimate, non-retaliatory reason for his actions. *See Reeves*, 530 U.S. 142; *Laughlin v. Metro Washington Airports Auth*., 149 F.3d 253, 258 (4th Cir. 1988). If the defendant meets the burden, a plaintiff then has the burden of persuasion to demonstrate by a preponderance of the evidence that the asserted reason is pretextual and she was the victim of retaliation. *Lamb v. Qualex, Inc*., 33 F.App'x 49, 60 (4th Cir. 2002).

It is undisputed that Plaintiff has engaged in protected activity with the filing of an EEO Complaint in 2002 alleging sex discrimination, among other things, against various persons,

---

6  Plaintiff has not offered any direct or indirect evidence of retaliation. " 'What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' " *Rhoads*, 257 F.3d at 392 (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995), *abrogated on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Therefore, the Court, like the parties, will use a burden-shifting analysis.

including Mr. Cox.   Plaintiff settled her 2002 EEO claim in or around December 2004 and January 2005.   The settlement proceeds were disbursed in February 2005.   It is also undisputed that Mr. Cox had knowledge of the prior protected activity. The retaliatory action Plaintiff complains of in this instance occurred in May 2005 when Defendant extended to Plaintiff the Modified Job Offer of a mail processing clerk rather than, as she argues, a reasonable accommodation for her Postmaster position.   The parties dispute whether Plaintiff suffered an adverse employment action and whether a causal connection exists between the adverse action and the protected activity.   However, the Court finds that even if it assumes that Defendant acted adversely to Plaintiff, Plaintiff has not shown a genuine issue of material fact relative to the causal connection between the adverse action and the protected activity.

In her opposition, Plaintiff asserts that she suffered an adverse action "very closely" after engaging in protected activity.   This Court disagrees.   The record reveals that three years lapsed between the time Plaintiff filed her EEO Complaint in 2002 and the issuance of the Modified Job Offer in 2005.   Plaintiff alleges that "Plaintiff's prior EEO claim was settled in or around December 2004 and January 2005." (Compl. ¶ 37.)   If the Court assumes the latter month as the period upon which a calculation of the temporal proximity determination could be made, at least four months separated the settlement of that prior protected activity and the issuance of the Modified Job Offer to Plaintiff in May 2005.   Further, to the extent that Plaintiff contends she suffered an adverse action on March 8, 2005, when Defendant posted her Postmaster position as vacant and did not consider offering a reasonable accommodation to her to allow her to maintain that position, it would appear that ten weeks elapsed between January 2005 and March 8, 2005. The Fourth Circuit Court of Appeals has asserted that a ten week separation, as well as a three or

four month lapse between the protected activity and the adverse action, is "too long to establish a causal connection by temporal proximity alone." *Perry v. Kappos,* No. 11-1476, 2012 WL 2130908, at *6 (4th Cir. June 13, 2012) (unpublished decision) (citing *Pascual v. Lowe's Home Ctrs., Inc*., 193 F.App'x 229, 233 (4th Cir. 2006) (unpublished decision); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

"Save for situations in which the adverse employment decision follows the protected activity 'very close[ly],' 'mere temporal proximity between the two events is insufficient to satisfy the causation element of the prima facie requirement." (*Id.*) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 273 (2001)).   In instances in which the temporal proximity between the two events is too great, "a plaintiff must present 'other relevant evidence . . . to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." (*Id*.) (quoting *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir. 2007)).   Plaintiff has failed to do so. Plaintiff's assertions relative to the disbursement of her settlement funds personally by Mr. Cox in February 2005 does not demonstrate any retaliatory conduct and animus.   Plaintiff contends that "Mr. Cox deliberately withheld information to guide Mr. Akers, a new manager, with regard to providing [her] with a reasonable accommodation." (Pl's. Opp'n at 28.)   However, this assertion is not supported by any evidence in the record that Mr. Cox acted with any deliberation or discriminatory animus.   Plaintiff has cited to no evidence, direct or otherwise, that Mr. Cox created the modified job offer provided to her, disapproved of an offer or job duties suggested by Plaintiff's supervisor, Mr. Akers, or intentionally delayed consideration of the offer to Plaintiff. "At the summary judgment stage, the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."

24

*Perry*, 2012 WL 2130908, at *3 (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).   As a result of the foregoing, and giving Plaintiff the benefit of all reasonable inferences, the Court finds that Plaintiff has failed to present a genuine issue of material fact with respect to a necessary element of her claim of retaliation pursuant to the Rehabilitation Act.

Moreover, even if this Court were to assume that Plaintiff has set forth a prima facie case of retaliation and that Defendant established a legitimate non-retaliatory reason for his actions (that Plaintiff could not perform the duties of the Postmaster position, failed to request a reasonable accommodation of the same, and retired from the Postmaster position because of her disability), the Court finds that Plaintiff has not demonstrated that the proffered reasons were pretextual. Plaintiff attempts to do so by pointing to Mr. Cox's experience with reasonable accommodation situations and his involvement with Mr. Akers in identifying job duties she could perform within her limitations by suggesting that "it is suspicious that the Manager of Human Resources, who also had the most experience with the kind of reasonable accommodations that would be necessary to formulate a modified job offer, would either not be involved or try to minimize his role in a process which he should be overseeing." (Pl.'s Opp'n at 30.)   Such speculation is not permissible to survive a motion for summary judgment.   This argument also ignores the evidence that Plaintiff did not request a reasonable accommodation for the Postmaster position in 2005 when she sought re-employment and that Mr. Akers stated that he created the duties in the modified job offer. Further, there is evidence in the record detailing Plaintiff's own subjective statements that she could not perform most of the duties of the Postmaster position in 2004.   Plaintiff has cited to no portion of the record where she advised Defendant that her abilities had changed.   Moreover, Defendant had knowledge of the opinion of Plaintiff's treating physician in July 2004.   After

25

careful consideration of the evidence and the applicable law, the Court finds Plaintiff has not presented any genuine issue as to any material fact that she could perform the duties of the Postmaster position.   Plaintiff merely speculates about the appropriate level of Mr. Cox's involvement in the process to identify a modified job for her an inference of retaliatory motive. Therefore, as to this claim, Defendant is entitled to summary judgment as a matter of law.

### IV.     CONCLUSION

WHEREFORE, for the reasons stated herein, the Court does hereby **ORDER** that *Defendant's Motion for Summary Judgment* (Document 21) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     July 20, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

26